IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| DOUG SMALLS, ) | |
| Plaintiff, ) | Civil Action No. 7:06CV00029 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| ) | By: Hon. Glen E. Conrad |
| GENE M. JOHNSON, et al. ) | United States District Judge |
| Defendants. ) | |

Doug Smalls, a Virginia inmate proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983. The action is presently before the court on defendants' motion for summary judgment. For the reasons that follow, the court will grant defendants' motion.

## BACKGROUND

Smalls is incarcerated at Buckingham Correctional Center. On April 28, 2005, Monica Goad, the prison's Operations Officer, notified Smalls that the following six publications had been disapproved for possession, because they were found to be in violation of Division Operating Procedure (DOP) 852-7.8(1) and (2)[1]: Graham Crackers, Vol. 2, No. 3; Black Heat, No. 66; Black Sex-sations, Vol. 5, No. 4; High Society, June 2001; Players Girls Pictorials, Vol. 25, No.2; and Mayfair, Vol. 38, No. 12. Goad advised Smalls that the publications would be forwarded to the Publication Review Committee (PRC), unless he notified her within seven days that he wished to have the prison dispose of the publications in accordance with DOP 856. Smalls did not ever respond to Goad's notice. Therefore, she forwarded the disapproved publications to the PRC on May 11, 2005.

---

[1] DOP 852-7.8(1) prohibits publications that contain "[e]xplicit or graphic depictions of sexual acts...." DOP 852-7.8(2) prohibits publications that contain "[m]aterial which promotes, solicits, depicts or describes the commission of same gender sexual activity and/or contains depictions of lewd exhibitions of uncovered genitals of individuals of the same sex as the institutional population."

On June 28, 2005, Goad notified Smalls that the PRC had disapproved all six publications. The PRC determined that the publications violated DOP 852-7.8(1) and (2). Goad advised Smalls that if he was unhappy with the PRC's decision, he could appeal the decision by utilizing the Inmate Grievance Procedure. Goad further advised Smalls that the prison would dispose of the publications in accordance with DOP 856, if he chose not to appeal the decision by the PRC.

On July 1, 2005, Smalls filed a grievance requesting to view the disapproved publications and retain them for his personal use. On July 18, 2005, the Warden determined that the grievance was unfounded, and that Smalls would not be permitted to review or retain the publications. The Warden advised Smalls that he could appeal the decision to the Director of the Virginia Department of Corrections.

Smalls subsequently appealed the Warden's decision. On August 1, 2005, the decision was upheld by the Deputy Director of Operations for the Department of Corrections. The Deputy Director determined that the PRC had properly disapproved the publications in accordance with DOP 852. Smalls was advised that the Deputy Director's decision was the last level of appeal. At Smalls' request, the prison disposed of the publications by returning them to the publisher on November 16, 2005.

Smalls filed the instant action on January 13, 2006, alleging that defendants violated his rights under the First Amendment and the Due Process Clause of the Fourteenth Amendment. On June 30, 2006, defendants filed a motion for summary judgment. Smalls was subsequently directed to file a response to defendants' motion within twenty days. Although Smalls filed a timely response, he argued that the court should refrain from ruling on defendants' motion until he had the opportunity to conduct discovery. The court construed Smalls' request as a motion to propound

discovery. By order entered July 20, 2006, the court granted Smalls' motion and directed him to file any discovery requests within fourteen days. Because the fourteen-day period has now expired, and no discovery requests have been filed, defendants' motion for summary judgment is ripe for review.

## STANDARD OF REVIEW

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is properly granted if "there is no genuine issue as to any material fact and the ... moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). For a party's evidence to raise a genuine issue of material fact to avoid summary judgment, it must be "such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether to grant a motion for summary judgment, the court must view the record in the light most favorable to the non-moving party. Terry's Floor Fashions, Inc. v. Burlington Indust., Inc., 763 F.2d 604, 610 (4th Cir. 1985).

## DISCUSSION

1. First Amendment Claim

In his first claim, Smalls alleges that defendants violated his First Amendment rights by not permitting him to possess the six publications that he had ordered. As a prison inmate, Smalls retains certain First Amendment rights, including the right to receive written publications. Thornburgh v. Abbott, 490 U.S. 401, 407-408 (1989). However, an inmate's constitutional rights are not unrestricted. Prisons may adopt regulations that infringe upon an inmate's constitutional rights as long as the regulations are "reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 87 (1987).

In order to determine whether the regulation relied on by defendants is constitutionally

3

permissible, the court must consider four factors: (1) whether the disputed regulation is logically connected to the legitimate government interest invoked to justify it; (2) whether the inmate has alternative means of exercising the right in question; (3) the impact that accommodation of the asserted right would have on other inmates, prison officials, and the allocation of prison resources; and (4) whether there is a ready alternative that would fully accommodate the inmate's rights. Id. at 89-90. When applying these factors, the court must "respect the determinations of prison officials." United States v. Stotts, 925 F.2d 83, 86 (4th Cir.1991). Plaintiff bears the ultimate burden of establishing that a prison regulation is unconstitutional. See Hause v. Vaught, 993 F.2d 1079, 1082 (4th Cir. 1993).

Applying the Turner factors to this case, the court concludes that DOP 852 is "reasonably related to legitimate penological interests." Turner, 482 U.S. at 87. First, there is a logical connection between the regulation and the legitimate governmental interests underlying the regulation. The Virginia Department of Corrections has a legitimate interest in rehabilitating inmates, as well as in maintaining security, discipline, and order. See Hodges v. Virginia, 871 F. Supp. 873, 876 (W.D. Va. 1994), rev'd on other grounds, Montcalm Publ. Corp. v. Beck, 80 F.3d 105 (4th Cir. 1996) ("The interests articulated by the VDOC, security, discipline, order public safety, and rehabilitation, need no defense."). Such interests are negatively impacted by sexually explicit publications. See Id. As Goad explains in the affidavit submitted with defendants' motion for summary judgment, the possession of sexually explicit materials by inmates can lead to sexual harassment, and can undermine the safety of prison employees and other inmates. Additionally, the presence of sexually explicit materials can significantly undermine rehabilitation efforts, especially those undertaken with respect to sex offenders. In response to Goad's affidavit, Smalls argues that

the employees at Buckingham have very little interest in rehabilitating inmates, and that the presence of sexually explicit materials would not make it more difficult to prevent deviant behavior. However, because correctional officials are in a better position to ascertain whether such materials would create an "intolerable risk of disorder," Thornburgh, 490 U.S. at 416, the court finds Smalls' arguments unpersuasive. See In re Long Term Admin. Segregation of Inmates Designated as Five Percenters, 174 F.3d 464, 469 (4th Cir. 1999) (noting that prison officials should be accorded wide-ranging deference in the adoption and execution of policies that are needed to preserve discipline and order, since they are best positioned to foresee threats to order and to fashion responses to those threats).

The second factor of the Turner test is whether the inmate has alternative means of exercising the right in question. Since DOP 852 permits a broad range of publications to be received and read, and Smalls has not alleged that he has been denied all opportunities to read other materials, the court concludes that the policy clearly satisfies the second factor. See Thornburgh, 490 U.S. at 418.

The third factor to be addressed is the impact that the accommodation of the asserted right would have on third parties, such as prison guards and other inmates. As previously explained, the class of publications at issue in this case, if permitted, would potentially invite disruptive conduct and adversely affect the rehabilitation process. Authorizing the receipt of such materials, which could be easily circulated within the prison, would have a significant "ripple effect" on fellow inmates and staff members. Turner, 482 U.S. at 90. Thus, because the right in question "can be exercised only at the cost of significantly less liberty and safety for everyone else," the court must "defer to the informed discretion of corrections officials." Thornburgh, 490 U.S. at 418 (internal

5

Case 7:06-cv-00029-GEC-mfu   Document 24   Filed 08/21/06   Page 5 of 8   Pageid#: 140

quotations omitted).

Lastly, the court must consider whether a ready alternative exists that would fully accommodate Smalls' rights. See Turner, 482 U.S. at 90 (noting that "the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an 'exaggerated response' to prison concerns"). Having reviewed the parties' arguments, the court agrees with defendants that DOP 852 is not an exaggerated response to prison concerns, and that no less intrusive alternative is readily available.[2]

For these reasons, the court concludes that DOP 852, as applied to prohibit the publications ordered by Smalls, is "reasonably related to legitimate penological interests." Id. at 87. Therefore, defendants are entitled to summary judgment with respect to Smalls' First Amendment claim.

2. Due Process Claim

In his second claim, Smalls alleges that defendants violated his due process rights by not allowing him to effectively challenge the decision to disapprove the publications. Smalls suggests that his efforts were ineffective because defendants refused to permit him to view the publications before they were disapproved.

It is well established that the decision to withhold inmate mail must be accompanied by "minimum procedural safeguards." Procunier v. Martinez, 416 U.S. 396, 417-18 (1973), overruled on other grounds by Thornburgh v. Abbott, 490 U.S. 401 (1989). The United States Court of

---

[2]Smalls emphasizes that the policy has been applied in a more stringent fashion since Goad began working at Buckingham, and that she has prohibited publications that were previously approved. However, such seemingly inconsistent results might be remedied only by a more restrictive policy, which could lead to the exclusion of publications that would have otherwise been acceptable. See Thornburgh, 490 U.S. at 417, n. 15 ("Given the likely variability within and between institutions over time, greater consistency might be attainable only at the cost of a more broadly restrictive rule against admission of incoming publications.").

6

Appeals for the Fourth Circuit has held that due process requirements are met when the following safeguards are present: "(1) appropriate notice; (2) a reasonable opportunity to challenge the initial determination; and (3) an ultimate decision by a disinterested party not privy to the initial censorship determination." Hopkins v. Collins, 548 F.2d 503, 504 (4th Cir. 1977).

Applying these principles to the instant case, it is clear that Smalls was afforded adequate procedural protections. On April 28, 2005, Goad notified Smalls, in writing, that she was disapproving the publications. The publications were then forwarded to the PRC for further review on May 11, 2005. On June 28, 2005, Goad notified Smalls that the publications had been disapproved by the PRC, and that he could utilize the Inmate Grievance Procedure to appeal the PRC's decision. Smalls ultimately appealed the PRC's decision to the highest level. Thus, because Smalls received appropriate notice, a reasonable opportunity to challenge Goad's initial determination, and an ultimate decision by an uninterested party who was not privy to the initial determination, the court concludes that defendants did not violate Smalls' due process rights.[3] See Hodges, 871 F. Supp. at 878 (holding that the due process rights of subscriber inmates were adequately protected by a policy that (1) required notification that a publication would not be delivered, and that (2) provided the opportunity to appeal the decision through the Inmate Grievance Procedure). Accordingly, defendants are entitled to summary judgment with respect to Smalls' due

---

[3] The court notes that in his original complaint, Smalls relies on Montcalm Publishing Corp. v. Beck, 80 F.3d 105 (4th Cir. 1996) to support his assertion that defendants should have allowed him to view the publications before they were disapproved. However, Smalls' reliance on Montcalm is misplaced, since that case addressed the constitutional rights of publishers of disapproved publications. Id. at 109 (emphasis added); see also Cuoco v. Hurley, 2000 U.S. Dist. LEXIS 13970, at *7 (D. Colo. 2000) (explaining that the Montcalm decision was inapplicable to the plaintiff-inmate's case, since it only addressed the rights of publishers). Moreover, while the Montcalm Court concluded that a publisher's constitutional interests could not be adequately protected by "[a]n inmate who cannot even see the publication," Id., the Court did not, as Smalls suggests, mandate a procedure by which inmates are permitted to view disapproved publications. Instead, the Court remanded the case to the district court for a determination of the appropriate process to be provided to publishers. Id. at 110.

process claim.

## CONCLUSION

For the reasons stated, the court will grant defendants' motion for summary judgment. The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to plaintiff and counsel of record for defendants.

**ENTER**: This 18th day of August, 2006.

                                                    United States District Judge