CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JAN 05 2007

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| DOUG SMALLS,<br>Plaintiff, | )<br>)<br>) Civil Action No. 7:06CV00029<br>) |
| v. | ) **MEMORANDUM OPINION**<br>)<br>) By: Hon. Glen E. Conrad |
| GENE M. JOHNSON, et al.<br>Defendants. | ) United States District Judge<br>) |

Doug Smalls, a Virginia inmate proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983, alleging that the defendants violated his constitutional rights by not permitting him to possess certain publications. By opinion and order entered August 21, 2006, the court granted the defendants' motion for summary judgment. The case is presently before the court on the plaintiff's motion to reinstate the case. For the following reasons, the court will deny the motion.

Smalls is incarcerated at Buckingham Correctional Center. On April 28, 2005, Monica Goad, the prison's Operations Officer, notified Smalls that the following six publications had been disapproved for possession, because they were found to be in violation of Division Operating Procedure (DOP) 852-7.8(1) and (2)[1]: Graham Crackers, Vol. 2, No. 3; Black Heat, No. 66; Black Sex-sations, Vol. 5, No. 4; High Society, June 2001; Players Girls Pictorials, Vol. 25, No.2; and Mayfair, Vol. 38, No. 12. Goad advised Smalls that the publications would be forwarded to the Publication Review Committee (PRC), unless he notified her within seven days that he wished to have the prison dispose of the publications in accordance with DOP 856. Smalls did not respond to Goad's notice. Therefore, she forwarded the disapproved publications to the PRC on May 11, 2005.

---

[1] DOP 852-7.8(1) prohibits publications that contain "[e]xplicit or graphic depictions of sexual acts...." DOP 852-7.8(2) prohibits publications that contain "[m]aterial which promotes, solicits, depicts or describes the commission of same gender sexual activity and/or contains depictions of lewd exhibitions of uncovered genitals of individuals of the same sex as the institutional population."

On June 28, 2005, Goad notified Smalls that the PRC had disapproved all six publications. The PRC determined that the publications violated DOP 852-7.8(1) and (2). Goad advised Smalls that if he was unhappy with the PRC's decision, he could appeal the decision by utilizing the Inmate Grievance Procedure. Goad further advised Smalls that the prison would dispose of the publications in accordance with DOP 856, if he chose not to appeal the decision by the PRC.

On July 1, 2005, Smalls filed a grievance requesting to view the disapproved publications and retain them for his personal use. On July 18, 2005, the Warden determined that the grievance was unfounded, and that Smalls would not be permitted to review or retain the publications. The Warden advised Smalls that he could appeal the decision to the Director of the Virginia Department of Corrections.

Smalls subsequently appealed the Warden's decision. On August 1, 2005, the decision was upheld by the Deputy Director of Operations for the Department of Corrections. The Deputy Director determined that the PRC had properly disapproved the publications in accordance with DOP 852. Smalls was advised that the Deputy Director's decision was the last level of appeal. At Smalls' request, the prison disposed of the publications by returning them to the publisher on November 16, 2005.

Smalls filed the instant action on January 13, 2006, alleging that defendants violated his rights under the First Amendment and the Due Process Clause of the Fourteenth Amendment. On June 30, 2006, defendants filed a motion for summary judgment. Smalls was subsequently directed to file a response to defendants' motion within twenty days. Although Smalls filed a timely response, he argued that the court should refrain from ruling on defendants' motion until he had the opportunity to conduct discovery. The court construed Smalls' request as a motion to propound

2

discovery. By order entered July 20, 2006, the court granted Smalls' motion and directed him to file any discovery requests within fourteen days. After the fourteen-day period expired, and no discovery requests were filed, the court granted the defendants' motion for summary judgment.

On September 5, 2006, Smalls moved to reinstate the case, arguing that he did not receive the July 20, 2006 order directing him to file discovery requests within fourteen days. In response to Smalls' motion, the court entered another order directing Smalls to file discovery requests within fourteen days. The order advised Smalls that the court would rule on his pending motion to reinstate upon reviewing his discovery requests.

Smalls has now filed seven requests for production of documents and fifteen requests for admission. The requests for production of documents are as follows:

1. "Any and all grievances, complaints, or other documents" received by the defendants or other agents of the Virginia Department of Corrections concerning the censorship or disapproval of sexually oriented materials.

2. Any and all policies or directives concerning the process of approving or disapproving sexually oriented publications.

3. Any and all policies or directives concerning the "pre-notifications of approving or disapproving sexually oriented publications."

4. Any and all policies at Buckingham Correctional Center regarding sex offenders who are participating in the sex offender program.

5. Any and all policies for staff members at Buckingham who facilitate and direct the sex offender program.

6. The complete record of attendance in the sex offender program at Buckingham and the complete record of prison staff members who direct or run the program.

7. Any and all documents created by staff members at Buckingham from June of 2000 to the present date "concerning their concern that sexually oriented material[s] (publications or magazines) are creating a problem for the prisoner's rehabilitative focus, or placing staff in questionable safety."

3

The requests for admission are as follows:

1. Goad misled the court by averring in her affidavit that 450 sex offenders at Buckingham participate in the prison's sex offender program.

2. Less than six percent of the convicted sex offenders at Buckingham participate in the prison's sex offender program.

3. The court erred in concluding that DOP 852 is reasonably related to a legitimate penological interest, "since sexually oriented publications/magazines are allowed and rehabilitation is voluntary."

4. The restrictions on Smalls' First Amendment rights are not reasonably related to any legitimate penological interest since, before Goad's employment, the requested magazines would have been approved for possession.

5. The court incorrectly concluded that the possession of sexually oriented magazines by inmates can lead to sexual harassment and undermine the safety of prison employees and other inmates.

6. Since Goad began working at Buckingham and began prohibiting more publications, there has been an "increase of staff employment termination," due to "more staff becoming romantically involved with prisoners."

7. [T]his action proves that plaintiff's constitutional rights were violated unfairly."

8. "Plaintiff[] has established that the prison regulations are unconstitutional, as they apply to the subjective manner in which his six (6) publications were disapproved."

9. Other sexually explicit magazines have been approved for possession at Buckingham.

10. There is no discernible evidence to support the proposition that excluding sexually explicit material within a prison reduces the amount of sexual harassment within the prison.

11. Incarcerated sex offenders pose no unique security problems for institutions, and are, in most cases, "passive individuals."

12. Sex offenders convicted in Virginia are not required to participate in any type of treatment program, but may do so voluntarily.

13. Incarcerated men should have sexual publications "to assist in maintaining a reference to sexual education," and sexual publications help reduce instances of

4

sexual assault.

14. Prisons are allowed to use sexually explicit materials to treat sex offenders.

15. The disapproved magazines are "mainstream publications," and are no more offensive than "Hustler," which has been approved.

Having reviewed Smalls' requests for production of documents and his requests for admission, the court concludes that his motion to reinstate the case must be denied. It is apparent from Smalls' requests that he seeks to obtain information to support two arguments that were previously raised in his response to the defendants' motion for summary judgment. The first is that DOP 852 is not logically connected to any legitimate penological interests. The second is that the policy has been applied inconsistently or in a more stringent fashion since Goad began working at Buckingham. However, both of these arguments are without merit.

As explained in the court's previous opinion, prisons may adopt regulations that infringe upon an inmate's First Amendment rights as long as the regulations are "reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 87 (1987). In order to determine whether a regulation is constitutionally permissible, the court must consider four factors: (1) whether the disputed regulation is logically connected to the legitimate interest invoked to justify it; (2) whether the inmate has alternative means of exercising the right in question; (3) the impact that accommodation of the asserted right would have on other inmates, prison officials, and the allocation of prison resources; and (4) whether there is a ready alternative that would fully accommodate the inmate's rights. Id. at 89-90. When applying these factors, the court must "respect the determinations of prison officials." United States v. Stotts, 925 F.2d 83, 86 (4th Cir. 1991). The plaintiff bears the ultimate burden of establishing that a prison regulation is unconstitutional. See Hause v. Vaught, 993 F.2d 1079, 1082 (4th Cir. 1993).

5

Applying the Turner factors in this case, the court concluded that prison officials have a legitimate interest in rehabilitating inmates, as well as in maintaining security, discipline, and order, and that DOP 852 is "reasonably related" to these interests. Turner, 482 U.S. at 87. Relying on Goad's affidavit, the court emphasized that the possession of sexually explicit materials by inmates can lead to incidents of sexual harassment and potentially undermine the safety of prison employees and other inmates. The court also emphasized that the presence of sexually explicit materials can significantly undermine rehabilitation efforts, especially those undertaken with respect to sex offenders. With his present discovery requests, Smalls seeks to establish that there is no evidence that the presence of sexually explicit materials has actually led to incidents of sexual harassment or security problems at Buckingham, and that there is no evidence that the presence of sexually explicit materials has actually undermined efforts to rehabilitate sex offenders. However, "[t]o show a rational relationship between a regulation and a legitimate penological interest, prison officials need not prove that the banned material actually caused problems in the past, or that the materials are 'likely' to cause problems in the future." Mauro v. Arpaio, 188 F.3d 1054, 1060 (9th Cir. 1999) (quoting Thornburgh v. Abbott, 490 U.S. 401, 417 (1989)). Instead, prison officials need only ascertain whether admitting such materials would create an "intolerable risk of disorder" in the prison. Thornburgh, 490 U.S. at 416. Because prison officials are in a better position to make this determination, the court remains convinced that the plaintiff's first argument is without merit, and that none of his related discovery requests would affect the court's decision with respect to his First Amendment claim.

Smalls also seeks to establish that DOP 852 has been applied inconsistently or in a more stringent fashion since Goad began working at Buckingham, and that she has prohibited

6

publications that were previously approved. However, as the United States Supreme Court recognized in Thornburgh v. Abbott, the exercise of discretion called for by policies like DOP 852 "may produce seeming 'inconsistencies,' but what may appear to be inconsistent results are not necessarily signs of arbitrariness or irrationality." Id. at 417, n.15. Moreover, "[g]iven the likely variability within and between institutions over time, greater consistency might be attainable only at the cost of a more broadly restrictive rule against admission of incoming publications," which "might itself run afoul of the second Turner factor." Id. Based on the Supreme Court's reasoning in Thornburgh, the court remains convinced that Smalls' second argument is without merit, and that none of his related discovery requests would affect the court's decision with respect to his First Amendment claim.

For the reasons stated, the court will deny Smalls' motion to reinstate the case. The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to Smalls.

ENTER: This 5th day of January, 2007.

*/s/ Judge Conrad*
United States District Judge